Christian, J.,
delivered the opinion of the court.
This is a supersedeas to a judgment of the Circuit court of Tazewell county. It was an action of debt brought by the defendant in error against the plaintiffs in error, to recover the sum of $2,833, due by a writing obligatory under seal. The plaintiff's in error pleaded “payment and set off’.” Upon these issues, tried by a jury, a verdict was rendered for the defendant in error “for the debt in the declaration mentioned,” subject to certain credits endorsed upon the said writing obligatory, lo wit: the sum of $170, paid on the 4th December 1867, and the sum of $170, paid on the 30th September *207 1869. A motion was made to set aside this verdict upon two grounds. First. Because the verdict was contrary to the evidence; and second, because the verdict was rendered by the jury under a mistake as to its legal effect-. This motion was overruled by the court, and a judgment entered in accordance with the verdict of the jury.
The bill of exceptions sets out, as the “ only evidence offered by the plaintiffs, the bond in the plaintiffs’ declation mentioned,” and that the “only evidence offered by the defendants, was a receipt in the following words: ‘Received January 6th 1866, of E. S. Howard, one thousand dollars, in part payment of interest due on certain bonds executed by said Howard and Jas. R. Witten to H. George for land; received also of said Howard his note for $1,018, which (when paid) is also to be credited in payment of said interest; and moreover, if said Howard shall, and do assign me a judgment against the estate of W. O. George, which he expects shortly to obtain, I am to credit the amount of said judgment on the said note of $1,018. Said judgment will (as is supposed)-amount to some $768. (Signed,) J. M. McCall, adm’r of H. George, dec’d.’” The bill of exceptions then sets out certain “admissions” made at bar by the counsel on both sides for the parties. It was admitted that the bond sued upon was one of four bonds executed by E. S. Howard and J. R. Witten on the 12th day of January 1860 to Harvey George, then living, for a tract of laud, and that one of said bonds first due was for$5,000, due outlie lstday of September 1860; thatthe other three bonds were for $2,833.33$ each, payable respectively one on the 1st day of September 1861, one on the 1st day of September 1862, and the remaining bond payable on the 1st day of September 1863 ; aud that these were the bonds mentioned in the receipt: It was also admitted that judgment had been recovered on two of the bonds for the sum of $2,833.33$ each ; and that no part of the sum mentioned in the receipt of the *208 6th of January 1866, had been applied to the payment eiÜier interest or principal of said bonds. It was further stated in the bill of exceptions that “ there was no proof on the part of the plaintiff of the application of the money mentioned in said receipt, and that no reference was made to the $5,000 bond during the trial of the cause, except that made by the counsel for defendants in his statement of the case to the jupy, to the effect that the said $5,000 bond had been fully paid off by the defendants, which was denied by the plaintiff who claimed that the said bond had been burned, but had not been paid off.” Upon this evidence and upon these admissions, the case was submitted to the jury, who found a verdict for the plaintiff as herein-before set forth. I say, upon the evidence and admissions of the parties, for, of course, the statements of the counsel as to the payment or non-payment of the $5,000 bond, could not be considered by the jury, audit is difficult to conceive why these statements were incorporated in the bill of exceptions. Separating the statements of the counsel from the evidence and the admissions of the parties made at bar, it is manifest that the jury treated, as they were bound to treat, the $5,000 bond as still due and unpaid. Its execution and the consideration upon which it was founded, were both admitted. Ho proof was offered of its payment or satisfaction in any form. It must be taken then as a conceded fact in the case, that this bond was at the time of the trial due and unpaid. Another fact is clearly proved ; that at the time of the payment of one thousand dollars in cash and the execution of a note for $1,018, to wit, on the 6th day of January 1866, not one dollar of interest on these'bonds had been paid. This thousand dollars was received by the creditor in the very terms of the receipt offered in evidence, “in part payment of the interest due on certain bonds” executed by Howard and Witten to Harvey George for the purchase money of a tract of land. And *209 it is admitted that the four bonds, one for §5,000 and the other three for §2,833.38 each, are the bonds referred to in the receipt.
The money paid ivas on account of the interest on certain bonds. It was, manifestly, a general payment towards the interest due on the whole amount of indebtedness. The debtor did not exercise his right to designate which particular bond it should be credited upon. The right then accrued to the creditor, to apply the payment, and he could exercise the right to apply the payment, either at the time of payment or any subsequent time. I understand the well settled rule upon the subject of the application of payments to be this: The debtor, when he makes a payment which does not discharge the whole debt, has a right to say whether it shall be applied to the principal or to the interest of the debt due; and where there are several bonds or notes evidencing the debt, he may say to which the payment is to be applied. "When the debtor fails to exercise this right, then the creditor may make the application of the payment as to him may seem best. And whore neither party has exercised the right, the law, or, in other words, the court, will make the application according to the justice of the case in view of all the circumstances attending it. 3 Philips’ Evi. 441; 4 Cranch’s R. 317; Smith v. Loyd, 11 Leigh, 512. And where there is no direction by the debtor, and the right of application is not exercised by the creditor, the court will always apply the payment first to the application of the interest, in preference to the principal. And where there are several debts to which the payment may be applied, in the absence of an application by the parties, the law will apply the payment to the first debt due in order of time. 3 Philips’ Evi. 337, and note with authorities there cited.
In the case at bar, the most that can be claimed for the plaintiffs in error (Howard and Witten) is, that they made (a payment, which was to be applied to the pay *210 ment of interest generally “ on certain bonds,” without-specifying the particular bonds. In the absence of any such specification, it was the undoubted right of. the creditor, upon well-settled principles of law, to make the application to any one or to all of the bonds due. If he made the application to the bond first due, he had the undoubted right so to do, and did exactly what the law would have done for him, if he failed to make such election. 3 Philips’ Evi. (ubi supra.)
It is earnestly insisted, however, by the learned counsel for the plaintiffs in error, that it toas not shown by the evidence that the application of the amount paid, as set forth in the receipt of January 6th 1866, had been applied to the $5,000 bond; and that it was the duty of the defendants in error to have shown that fact. How, it must be remembered that the bond sued upon had been assigned to a third party ; and the suit was not brought for the benefit of the original obligee, but for the assignee. The original obligee might have had it in his power to have shown, affirmatively, that the payment had been applied to the first bond due ; but I think it was sufficient for the plaintiff in the court below, in this case, to show, as was conclusively shown by the facts proved, and the fair and legal inferences, which the jury had a right to draw from the facts proved, that there was still due from the obligors a principal sum sufficient, and more than sufficient to absorb in interest due (upon a bond of prior date to the one in suit,) the whole amount which had been paid ; and that it had been properly applied to that bond. There was another fact proved, which made this apparent beyond any reasonable doubt. It is apparent, from an examination of the endorsements on the bond sued upon, that the credits are for interest on the principal sum of $2,838; and they were paid in one and two years respectively after the receipt of January ’66 was executed, and long after the bond came *211 into the hands of the assignee. How it is manifest that no part of the principal or interest of that bond had been paid, and the obligors must be presumed to have known that fact, to wit, that the amount paid on the 6th January 1866, had been applied to a diffei'ent bond, They also knew that it had not been applied to either of the other two bonds of $2,833 each, upon which they had suffered a recovery of judgment by default. And therefore, the inference is irresistible, that they knew at the time they paid the interest to the assignee, and at the time they suffered a recovery on the other two bonds, that what they had paid went as a credit upon the bond first due. Certain it is that it is conclusively shown, that there is still due (there being no proof that the $5,000 has been paid,) from the obligors, a principal sum more than sufficient to absorb in interest due the amount called for by the receipt of the 6th January, 1866. I am clearly of opinion, that upon the facts proved and the fair and legal inferences to be drawn from those facts, the jury was right in finding a verdict for the whole amount “of the debt in the declaration mentioned,” subject only to the credits endorsed on the bond ; and that the Circuit court did not err in refusing to set aside the verdict upon the ground that the verdict ■was contrary to the law and the evidence.
The second ground of error assigned is, that the verdict of the jury “was rendered under a mistake as to its legal effect.” After the trial was concluded, and the jury discharged, six of their number “ severally made oath, that upon the trial of the cause it was their intention to render such a verdict as would entitle the defendants to have credit for the amount of the $2,018 receipt offered in evidence by them, to be applied to the interest on all four of the bonds executed by said defendants to Harvey George for lands. That it was not their intention to render such a verdict as would apply the $2,018 receipt exclusively as a credit on the$5,000 bond referred *212 to by counsel in the argument of the cause. And that if the legal effect of their verdict is to place the said -$>2,018 receipt as a credit on said $>5,000 bond, it is wrong, and is not their verdict.”
"Whether the testimony of jurors is admissible to im- , peach their verdict, is a question upon which the authorities were formerly unsettled and conflicting. It is indeed very difficult to lay down any precise rule which could be made of universal application without exception, to each particular case. In Virginia the practice was for a long time unsettled. In some few cases of mere and evident mistake, like Cochran v. Street, 1 Wash. 79, the testimony of jurors was received, and the verdict set aside: but the great preponderance of authority is against allowing jurors to impeach their own verdict; the courts, even in cases where it was allowed, under peculiar circumstances, always using such language as Lord Mansfield employed in Vaise v. Delaval, 1 T. R. 11; that “ to meddle with the verdict of the jury upon the evidence of some of the jurors, is a delicate business, and should be proceeded in with caution, to prevent the mischief of jurors being tampered -with.”
But since the decision of this court in Bull’s case, 14 Gratt. 613, 632, it may now be considered as well settled, as a general rule, that the testimony of jurors ought not to be received to impeach their verdict. Judge Moncure, delivering the opinion of the court in that case, after a most elaborate and able review of the English and American authorities on the subject, concludes, “In view of all the authorities and of the reason on which they are founded, we think that, as a general rule, the testimony of jurors ought not to be received to impeach their verdict; and without intending to decide that there are no exceptions to the rule, we think that even in cases in which the testimony may be admissible, it ought to be received with great caution. A contrary rule would hold out to unsuccessful parties and their friends the *213 strongest temptation to tamper with juries after their discharge, and would otherwise he productive of the greatest evils. The value of jury trial would be greatly impaired, and the whole administration of justice dependent upon it would be involved in the most painful uncertaintv.”
In the case before us here, the jury was polled, and each juror, for himself, solemnly declared it was his verdict ; but after they were discharged six of them make an affidavit in which they state that “ if the legal effect of their verdict is to place the said $2,018 receipt as a credit on said $5,000 bond, it is wrong and not their verdict.”
How the only issue which the jury was called upon to decide, (there being no account of offsets filed and none proved), was whether the bond sued upon was paid in whole or in part. It was their province to find the fact; they had nothing to do with the legal effect of their finding. I am of opinion that this case falls under the general rule settled by this court in Bull’s case, (supra), and does not come under any of the exceptions to it; and that the testimony of the jurors ought not to be received to impeach their verdict. I am therefore of opinion upon the whole case, that the judgment of the Circuit court of Tazewell ought to be affirmed.
Judgment aeeirmed.